## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :
                                  :
    -v-                           :          Criminal No. 21-cr-205-DLF-1
                                  :
MARISSA SUAREZ                    :

## Defendant Marissa Suarez's Sentencing Memorandum

On the Memorandum:

*Rocco C. Cipparone, Jr., Esquire*
205 Black Horse Pike
Haddon Heights, NJ 08035
(856) 547-2100
www.Cipparonelaw.com
Attorney for Marissa Suarez

## I.      APPLICABLE LEGAL FRAMEWORK FOR SENTENCING

The offense of which Ms. Suarez has been convicted is a petty misdemeanor (Class B), *see* PSR ¶64-65, and therefore the sentencing guidelines do not apply. U.S.S.G. §1B1.9. A Court's sentence must be "*sufficient but not greater than necessary*" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a)(italics added). The sentencing court of course must be consider and weigh the relevant statutory factors set forth in 18 U.S.C. § 3553(a).

The factors which the sentencing court must consider pursuant to 18 U.S.C. § 3553(a) are:

> (1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)  the need for the sentence imposed
>
>> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B)  to afford adequate deterrence to criminal conduct;
>>
>> (C)  to protect the public from further crimes of the defendant; and
>>
>> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)      the kinds of sentences available;

1

(4)     the kinds of sentence and the sentencing range
        established for ... the applicable category of offense
        committed by the applicable category of defendant as
        set forth in the guidelines ... issued by the
        Sentencing Commission[;]

(5)     any pertinent policy statement ... issued by the
        Sentencing Commission[;]

(6)     the need to avoid unwanted sentencing disparity among
        defendants with similar records who have been found
        guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the
        offense.

18 U.S.C. § 3553(a).

## II. UNRESOLVED REVISIONS TO THE PSR

There is a discrepancy between Ms. Suarez's recollection
of her consistency in reporting to Pretrial Services and the
automated records thereof. PSR ¶ 19. However, Ms. Suarez is
not challenging the pretrial Services records. Ms. Suarez
certainly did not intentionally flout the reporting
requirements, and overall has been compliant with the terms of
her release and fully respects the Court's authority and
Orders, and of course will continue to do so. The aberration
of her instant conviction aside, she has been and will in the
future remain a law-abiding, productive member of society who
has much to contribute positively. As this is not a guidelines
issue, the discrepancy in recollection simply is noted.

2

### III.   ANALYSIS OF THE SALIENT SENTENCING FACTORS

Analysis and application of the salient factors under 18 U.S.C. § 3553(a) makes clear that a sentence of probation with no term of incarceration is sufficient but not greater than necessary in the circumstances of Marissa Suarez and the case in context.

The salient sentencing factors are:

> ➢   **Nature and circumstances of the offense and the history and characteristics of the defendant**

Although the nature and circumstances of the offense are of course serious, the conduct by Ms. Suarez was aberrational and inconsistent with her well-established solid good character, the latter of which warrants significant sentence mitigation. Ms. Suarez truly regrets the implications of her conduct on January 6, 2021. It is important to consider that Ms. Suarez's conduct was comparatively peaceful (although improperly demonstrative, constituting a violation of 40 U.S.C. § 5104(e)(2)(G))).

Ms. Suarez did not engage in any physically violent conduct, and she did not damage any property. Indeed, at one point during the demonstration Ms. Suarez engaged in conduct to prevent violent conduct. While Ms. Suarez was outside the Capitol Building, she engaged in conduct to prevent violence toward a police officer. As detailed in the Criminal Complaint which

3

preceded the indictment, Ms. Suarez texted that she "actually saw a kid getting ready to throw a jack daniels bottle with some shit in at the cops and I started flipping out on him and then I informed some of the military guys and they handled him." See Criminal Complaint, Docket Entry 1-1 at 14 (quoting text of 01-07-21 10:16 am).

Ms. Suarez was unwilling to enter the Capitol Building using force and believed that at the point at which she entered it was not because of the use of force by anyone: "and once we saw they were letting us in without force, trish [sic] and I went in." 01/07/21 text 10:06:13 am (also quoted in GT Sentencing Memo at 9). Of course, she was aware of others doing so and even commented on such as the government points out in its sentencing memorandum, but nonetheless Ms. Suarez chose not to enter when that was occurring. Ms. Suarez also left the Capitol Building because it got violent. She texted on 01-06-21 (6:55:52 pm) "On our way back..sh** got violent so we left".

As is clear from the government's sentencing memorandum, Ms. Suarez did not enter any Senate or other offices. GT Sentencing Memo at 9.

> ### History and Characteristics of the Defendant

The instant conviction and the conduct by Ms. Suarez regarding it were aberrational. Ms. Suarez is 33 years old. Ms. Suarez has no

4

prior criminal history and has led a productive law-abiding life before and after this unfortunate conduct by her.

Letters to the Court from those who best know Marissa reveal Ms. Suarez's genuine and caring character are attached in the Appendix to this Memorandum referencing similar aspects of Ms. Suarez's character and history. Only some are referenced in this Memorandum, but others also appear in the Appendix. Her uncle Edward Yures advises the Court that Ms. Suarez "Throughout her life, … has proven to be a good hearted, hard-working, honest, and reliable person. Marissa worked hard to receive her undergraduate degree and then applied what she had learned while working at places, such as Coca-Cola and Kraft Heinz. After some time, she decided to pursue her dream job in law enforcement. It was a proud moment for me, and my entire family, when she officially became a Corrections Officer at the Monmouth County Sheriff's Office." A.003.

Marissa's aunt (by marriage) Michele Yures represents Marissa to be "a good person, she is hard working, honest and on the right side of the Law. She made a mistake on 1/6/21, no excuses, it was a mistake. She has already paid a huge price. Her lesson has been learned. She would not hurt anyone, she is a protector." Ms. Yures further recounts how Ms. Suarez gave of her time and patience to teach her cousin (Ms. Yures daughter) to drive, and that the instant conduct of conviction was indeed not a true reflection of Ms. Suarez's nature. A.005-006.

Sara Gervasi, a family friend who has known Marissa since she was born, notes Ms. Suarez's consistent work ethic since she was 15 years old (also reflected in Ms. Suarez's own letter to the Court and in the PSR), the impact that Ms. Suarez's career loss (discussed elsewhere in the memorandum and in the other attached letters) has had upon her, and her giving nature. A.007.

Ms. Suarez's mother Patricia Dell addresses aspects of the impact that Ms. Suarez's conduct and prosecution have had upon Marissa, most notably that "she has learned a great deal from this mistake and has grown exponentially from the aftermath." A.004. Ms. Dell also notes that Ms. Suarez has had many family members and friends of lifelong relationship distance themselves from her, a substantial and unfortunate collateral consequence of Ms. Suarez's actions that she is suffering. Ms. Dell notes Marissa's "kind, considerate, compassionate and honest to a fault" nature, and admires "her strength and fortitude after witnessing what she has endured since that unfortunate and dreadful day." A.004.

Ms. Suarez's friend Dawn Martinkovic summed up the dichotomy of Ms. Suarez's January 6, 2021 actions and her genuine, supportive, positive character:

> I have three children, one of whom is special needs. When spending time together, her true character shines through. She is always generous with her time, advice, and kindness. Whether it's taking care of my cat while I'm away, picking up something from the store, giving my children a ride, patiently listening to my autistic son tell the same story multiple times, or just

```
getting together when I need to talk, Marissa will
make herself available. She is honest, trustworthy,
and always empathetic.

     She's loyal, compassionate, and funny. She's a
pleasure to be around and I feel blessed to have her
in our lives. Marissa is intelligent, hard-working,
and driven. She is steadfast in her convictions. These
attributes, though mostly positive, can sometimes lead
a person to make a poor decision. I realize, by
demonstrating at the Capital, Ms. Suarez chose poorly.
She did not see the overall picture and thereby
committed, pled guilty to, and has been convicted of a
crime. What started out as patriotism, soon
deteriorated into criminal activity. This is
absolutely not in dispute and Marissa has paid a hefty
price both personally and professionally. Though her
actions were far from exemplary, they have not changed
my opinions of Marissa in any way. I still look
forward to and enjoy every moment we share together.
```

A.013.

The PSR, the attached letters, and the law-abiding life led by Ms. Suarez before and after the January 6, 2021 events demonstrate that her actions on that day were indeed out of character and is conduct that will not be repeated. She respects the law and will continue to be a productive, positive law-abiding citizen who supports family, friends, and her community.

➢ **Remorse and Acceptance of Responsibility**

Ms. Suarez appreciates the nature and substantial negative consequences of her conduct, as the Court can assess from her candid guilty plea, her acceptance of responsibility during the PSR interview (PSR ¶23), and her immediate acceptance of responsibility during a voluntary interview she gave to the FBI when arrested on

January 22, 2021. She did not ask for counsel, and she admitted her conduct and that it was a "stupid thing to do" and expressed willingness to help or cooperate with the government. *See* GT Sentencing Memorandum at 10.

➢ **Mental Health History**

Ms. Suarez has no history of mental health issues but has sought counselling to cope with the significant stress understandably experienced because of her arrest and prosecution, as well as the profound impact that the passing of her father has had on her. PSR ¶44. *See* also Patricia Dell letter (recounting impact of loss of Ms. Suarez's father), A.004.

➢ **Substance Abuse**

Although Ms. Suarez minimally occasionally used marijuana, she does not have any substance abuse problem. PSR ¶46.

➢ **Education**

Ms. Suarez earned a Bachelor's Degree in Labor Studies and Employment Relations in 2012 from Rutgers University and currently is working toward her Master's degree at Georgian Court University. She has one class remaining, and anticipates obtaining her Master's Degree in Business Administration in July of 2022. PSR ¶48.

➢ **Employment**

As mentioned above and in the attached character letters, Ms. Suarez always maintained a strong work ethic, beginning as a young teenager. Her salient employment history is set forth in the PSR

¶¶50-57. Unfortunately, Ms. Suarez's chosen and cherished career as a Corrections Officer in New Jersey, which as the attached letters indicate was her passion to serve her community in that regard, evaporated as a result of her conduct and arrest in the instant case. Her interest in law enforcement appeared as early as college when she interned for the NJ Dept. of Corrections in 2010 (PSR ¶57), and it turned into her full-time career in August 2019 when she began work as a Monmouth County NJ Sheriff's Officer. That career ended in January 2021. Albeit of her own doing, the loss of that long held passion to serve her community as a law enforcement officer is now only a memory, which is a substantial punitive collateral consequence that the Court should consider in mitigation of Ms. Suarez's sentence. To use Ms. Suarez's words, a "stupid thing" she did has cost her a lifelong dream and career.

Being resilient, though, to her credit Ms. Suarez went back to work in the tanning salon in which she worked part-time as a teenager, and now intends to purchase the tanning salon and become a business owner. PSR ¶51; A.001 (letter to Court from Marissa Suarez). Ms. Suarez's employer and now friend, who also is an Adjunct Professor at Monmouth University, Keith Kirsh attests to her business and friendship dedication as well: "Marissa has been a highly valued employee and leader at my Salon in Matawan, New Jersey, since 2013. During this tenure, she has been the main reason for the success and continuity of the company and has worked both part-time and full-time

during this period. When she began her career in law enforcement full time, she continued to contribute her valuable time to my business and helped us survive the difficult Covid-19 Pandemic. She did this because she genuinely cared about the business and saw that I needed help." A.0012.

➢ **Family Life**

As the letters in the Appendix demonstrate, Ms. Suarez has a supportive network of family and friends, which support exists because she earned it. Ms. Suarez has been caring toward her family members and friends, and her community, as reflected in those letters.

Ms. Suarez has a great relationship with her mother Patricia Dell and had a best friend close relationship with her father as well until his untimely and unexpected death in August 2021. PSR ¶35-37.

Ms. Suarez and her husband divorced in November 2021, as a result of her husband (per Ms. Suarez's understanding) having turned her in to the FBI concerning the instant matter. PSR ¶38. Again, that unfortunately has been a substantial negative collateral consequence of her actions, which collateral consequences the Court should consider in mitigating sentence.

Ms. Suarez is now in a stable and productive romantic relationship (PSR ¶39).

➢ **Lack of Prior Record; Risk of Recidivism; Impact of Sentence Type on Recidivism**

Ms. Suarez has no prior criminal history. PSR ¶¶27-33.

As the U.S. Sentencing Commission studies have determined, persons who receive prison sentences indeed are much more likely to reoffend than those who receive probation, probation/home confinement or a community split sentence: "Offenders who received a prison only sentence had a higher rearrest rate than offenders who received a different form of sentence (Figure 23)."[1]  Figure 23 in that report is reproduced here:



*Fig. 23* Rearrest Rate of Recidivism Study Offenders by Type of Federal Sentence Imposed and Age at Release

For those reasons, and in light of all of the information contained in this Memorandum and its Appendix, as well as the PSR,

---

[1] The Effects of Aging on Recidivism Among Federal Offenders at 26, United States Sentencing Commission (December 2017). The full report can be accessed and downloaded at https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.

Ms. Suarez certainly is not likely to reoffend.

> ### Deterrence and Punishment

The attendant purposes of sentencing would be met by a sentence of probation with no incarceration.

### a.   Specific Deterrence

The need – or more importantly lack of need - for specific deterrence is addressed by reference to the immediately preceding section of this Memorandum. Ms. Suarez of course has learned from her serious but aberrational transgression, she has and will continue to suffer the collateral deterrent consequences of loss of her career, loss of family and friends, a non-expungable "Google" and social media history that will forever brand her for this offense whenever anyone simply searches on her name (*see e.g.,* A.101-011), and the lasting stigma and consequences of a federal conviction. No period of incarceration is needed for specific deterrence here.

### b. General Deterrence

General deterrence must be viewed in context. Here, Ms. Suarez's personal history, and the picture of her that emerges overall, makes clear that general deterrence still could and would be served by a probation sentence with no incarceration.

The many factors that support this conclusion are presented in detail *supra* and in the Defendant's Appendix. The combination of those factors makes this defendant's situation unique enough to warrant a sentence of probation with no incarceration, and such would

not do any harm to general deterrence. Such a sentence, and a lifelong federal conviction, along with the other attendant even if collateral consequences thereof which Ms. Suarez has and will continue to suffer, would do no harm to the concept of general deterrence. It would provide general deterrence in context.

### c. Punishment

The need for punishment still would be met by a sentence of probation, for all the reasons discussed above. The conviction alone is substantial punishment given the lasting stigmatic effect it will have upon Ms. Suarez. Other punitive effects upon Ms. Suarez include the following:

- The loss of her marriage
- The loss of her career
- The loss of social standing and the ubiquitous news and social media coverage of her case that will be ever present on the easily searchable internet
- The difficulties she has had in getting employment because of such

Those things – although not perhaps intentionally punitive – nonetheless qualify as punishment suffered by Ms. Suarez.

➢ **The kinds of sentences available**

The urged sentence is within the range of those available to the Court in this case.

➢ **The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines**

Not applicable to this case.

13

> ➢ **Pertinent policy statement issued by the Sentencing Commission**

Not applicable to this case.

> ➢ **The need to avoid unwanted sentencing disparity among defendants with similar records who have been found guilty of similar conduct**

Each case and defendant still is an individual consideration, and in light of all of the foregoing factors discussed, the requested sentence would not create any <u>unwarranted</u> sentencing disparity from others convicted of similar offenses. Furthermore, the sentencing chart submitted by the government at docket entry 54-1 makes clear that a substantial number of defendants who have been sentenced for the same offense for which Ms. Suarez stands sentencing – 40 U.S.C. § 5104€(2)(G), have received a probation sentence without incarceration. There would be no unwarranted sentencing disparity by applying a probation sentence with no incarceration to Ms. Suarez.

> ➢ **The need to provide restitution to any victims of the offense**

Ms. Suarez has agreed to the restitution sought.

<strong><u>CONCLUSION</u></strong>

Based on the foregoing, it respectfully is submitted that the Court should sentence Ms. Suarez to a sentence of probation without any incarceration pursuant to the Sixth Amendment, *Apprendi*, *Booker* and their progeny.  That sentence would be "*sufficient but not greater than necessary*" to achieve an appropriate balance of the

14

relevant sentencing factors.

Respectfully submitted,

/s/Rocco C. Cipparone, Jr.
Rocco C. Cipparone, Jr., Esquire
Attorney for Marissa Suarez

Dated:    July 8, 2022

# APPENDIX TO
# MARISSA SUAREZ'S
# SENTENCING MEMO

Marissa Suarez



July 6, 2022

Honorable Dabney L. Friedrich
U.S. District & Bankruptcy Courts for D.C.
333 Constitution Avenue
NW Room #1700
Washington, DC 20001

Dear Judge Dabney L. Friedrich,

I have been thinking for quite some time now about how I got here. Sometimes, I wake up thinking that this cannot be my life. I get out of bed and realize that I am in an alternate reality from what I worked so hard for throughout my professional career. I did everything how I was supposed to. I rarely drank, I never did drugs, or even smoked cigarettes for that matter. Only a couple years ago, when I gave up on my dream of being in law enforcement did I smoke marijuana for the first time. I worked so hard to be on the right side of the law because that is where I found absolute happiness, in law enforcement. Now, I wake up, driving back to the part-time job that I had while working full-time within each and every job I have had since 2011. I wake up knowing that I will most likely never be in law enforcement again. I have applied to jobs to try to get back into the workplace - jobs that I am overqualified for, but do not even get a phone call back because a quick Google search labels me a domestic terrorist. My life has changed forever since January 6, 2021. I have taken full responsibility for what I did on that day. Because of my actions, I not only lost my dream career, friends, family, my privacy, and my clean reputation. Every day I think about how I wish I could rewind time and go back to before I made the biggest mistake I have ever made. I only wish I could go back to where I was the happiest, working as a Correctional Officer, serving my community.

On August 14, 2021, I lost my father and my best friend unexpectedly. Another loss on my belt and even more stress than one person should have to endure. I started seeing a therapist as well as grief counseling. Although my Dad's passing was my worst nightmare come true, he has given me a chance to take a break, take a step back, and reflect. Because of him, I am able to finish my Master's degree in Business Administration and reroute my life. Since I am unable to rejoin the "normal" workplace, I am forced to be my own boss. Now, I am dedicating my life to my community in a different way. Soon, that part-time job from 2011 will become my very own.

I am positive that all of the character letters anyone could write will never paint a picture big enough to describe me. I only hope that you will take the information given to you and have mercy on me. Yes, I made a grave mistake on January 6, 2021 and I am remorseful. However, I am an upstanding citizen, one who was raised by two wonderful parents, one who is not around to see what happens to me this week. I have done everything right in my life. I have never had malintent or hurt anyone, ever. I have a clean record and will continue to have such. I am a good person with a good heart and made one mistake that will follow me for the rest of my life.

**A.001**

Thank you for taking the time to consider this my character letter.


Sincerely,

Marissa Anne Suarez

Edward M. Yures, Esq.



July 7, 2022

The Honorable Dabney L. Friedrich
U.S. District & Bankruptcy Courts for DC
333 Constitution Avenue
NW Room #1700
Washington, DC 20001

Dear Judge Friedrich:

I am writing this letter in support of my niece, Marissa Suarez, in the hope that you will consider
all of her positive attributes during your sentencing determination. To be clear, my niece
understands what she did at The Capitol on January 6, 2021, was not acceptable and was a lapse
in judgment that she cannot undo.

The passion and energy that she has demonstrated throughout her life unfortunately pulled her in
the wrong direction on that day. However, I sincerely believe her positive attributes far
outweigh the acts of that singular day. Throughout her life, Marissa has proven to be a good
hearted, hard-working, honest, and reliable person. Marissa worked hard to receive her
undergraduate degree and then applied what she had learned while working at places, such as
Coca-Cola and Kraft Heinz. After some time, she decided to pursue her dream job in law
enforcement. It was a proud moment for me, and my entire family, when she officially became a
Corrections Officer at the Monmouth County Sheriff's Office. After her involvement at The
Capitol, she lost her job as a Corrections Officer. I believe that type of punishment will last her
entire lifetime. She understands that and has chosen- true to her character and spirit- to move
forward to better herself and those around her, as she is currently pursing becoming a business
owner and is scheduled to receive her Master's degree this summer.

As an uncle, I am very proud of Marissa's educational and work-related achievements, but above
and beyond that is the way in which she has been a loving and caring cousin to my children.
They look up to her and always look forward to spending time with her. Please take into account
all of the positive things that Marissa has done and will continue to do as you make your
sentencing determination. Thank you for your time and consideration.

Respectfully submitted,

*Edw M. Yu*

Edward M. Yures

**A.003**

Patricia A. Dell



6/19/21

Honorable Dabney L. Friedrich
U.S. District & Bankruptcy Courts for DC
333 Constitution Avenue
NW Room #1700
Washington, DC 20001

Your Honor,

Please know that I appreciate your position while hoping that you too, appreciate mine.

I am her mother and she is my only child. I have nothing but praise and admiration for my beloved daughter, Marissa Anne Suarez. She is kind, considerate, compassionate and honest to a fault. I admire her strength and fortitude after witnessing what she has endured since that unfortunate and dreadful day.

Ensnared by chaos, combined with curiosity, Marissa entered the United States Capitol Building on January 6, 2021. This egregious error in judgment has cost her dearly. I assure you, she has learned a great deal from this mistake and has grown exponentially from the aftermath.

As a result, she has lost many lifelong relations with both family and friends, as well as her dream to serve as a law enforcement officer. I am proud of her for accepting responsibility for her actions and so very grateful that she did not lose her sense of self as her name was being tainted by thousands across social media and news networks.

During this time period, Marissa was going through a difficult divorce. She was forced to leave her home resulting in the separation from her two pups that she adored. On August 14, 2021, her father, who was her best friend, passed away from a heart attack.

It is my humble opinion that only one with exceptional character could forge forward with integrity while facing such adversity and loss.

Thank you for affording me this opportunity to share this experience from my perspective.

Kind Regards,

Patricia A. Dell

**A.004**

Michele Yures

6/21/22

Honorable Dabney L. Friedrich
U.S. District & Bankruptcy Courts for DC
333 Constitution Avenue
NW Room #1700
Washington, DC 20001

Dear Judge Friedrich:

I am writing this letter with regard to my niece, Marissa Suarez, in hope that you will
see the qualities that she holds beyond her unfortunate decision made on January 6,
2021.

I met my husband, Marissa's Uncle, the day she was born 33 years ago. Marissa and I
have been close throughout her childhood as well as her adult life and I hold many
priceless memories with her.

As I am sure you are aware, Marissa is a very brave and strong individual. Her
background of Corrections Officer at a young age and the fact of her completing the
requirements of Police Academy Training speak for itself.

What you may not know is that Marissa is also a kind, honest and caring person.
Marissa's cousins look up to her. She has helped me in many ways when I needed a
hand.  She is a role model, not only for my daughters, but also for my teenage son who
is interested to become a Police Officer in his future. While juggling her own busy life,
Marissa has helped my teenage daughter learn to drive (not an easy task).  Marissa has
also shown them that if you work hard, you can become anything you hope to be.

**A.005**

It is well known in our family that Marissa's dream was always to be in Law Enforcement, so you can imagine the heartbreak when we learned of the devastating news of 1/6/21.

In an effort to not make this letter too lengthy I am going to try to be straight to the point. Marissa is a good person, she is hard working, honest and on the right side of the Law. She made a mistake on 1/6/21, no excuses, it was a mistake. She has already paid a huge price. Her lesson has been learned. She would not hurt anyone, she is a protector. Further punishment is not necessary to ensure that she will not repeat her mistake, she is not going to continue to break the law. It is a huge loss to the Correctional Facility to have lost her as an employee and it is a huge loss for Marissa to lose the career of her dreams. Punishment has already been deemed. Please consider this heartfelt letter from her loving Aunt and family, who adore her, when you are making your decisions.

Sincerely,

Michele Yures

Michele Yures

2

**A.006**

Sara Gervasi



6/24/22

Honorable Dabney L. Friedrich
U.S. District & Bankruptcy Courts for DC
333 Constitution Avenue
NW Room #1700
Washington, DC 20001

Dear Judge Friedrich,

My name is Sara Gervasi and I am writing on behalf of Marissa Suarez.

I have known Marissa from the time she was born. Marissa comes from a good and caring family. She is a loyal and loving person and has always been a good and supportive friend to both of my daughters. Marissa has a heart of gold, as do both of her parents, whom I have been friends with for over fifty years.

I have watched Marissa work very hard and put her whole heart in to every job she has ever had since the age of 15. Marissa's work ethics and determination go far and above most.

On January 6, 2021 I believe Marissa had no ill intentions and truly made a mistake. She has lost many things and career avenues that she worked very hard for due to this error in judgement.

Marissa has acknowledged her poor decision and knows it was a bad choice to enter the Capitol. I believe she has learned from her mistake and is very remorseful.

Thank you for your time and consideration.

Sincerely,

Sara Gervasi

**A.007**

7/1/22

Stefanie Stern

██████████████
██████████████
██████████

Honorable Dabney L. Friedrich
U.S. District & Bankruptcy Courts for DC
333 Constitution Avenue
NW Room #1700
Washington, DC 20001

Dear Judge,

I write this letter to you with the utmost respect. My name is Stefanie Stern. I am a
lifelong friend of Patricia Dell and have known her daughter Marissa, her entire life.
They are a well-respected family in our community. Upon reflection of that day please
allow me to convey to you my personal feelings. While Marissa did not use proper
judgement, I can assure you there was no malice or ill intent in her heart. If life were
filled with do overs and second chances, I am certain Marissa's actions would be very
different. I feel if given the chance, Marissa would follow her passions for her love of
community, animal rights and those less fortunate. Judge, I hope and pray you will find
it in your heart to have mercy on Marissa. She has already suffered so much.

Respectfully,

Stefanie Stern

**A.008**

6/20/22

Anne Yures



Honorable Dabney L. Friedrich
U.S. District & Bankruptcy Courts for DC
333 Constitution Avenue
NW Room #1700
Washington, DC 20001

Dear Judge Friedrich,

I am the proud grandmother of Marissa Anne Suarez. She is the most lovable, thoughtful granddaughter anyone could ask for. Out of 7 grandchildren, she never forgets to wish me a happy Grandmother's Day. Marissa always acknowledges me with a hug and a kiss when she sees me.

It is very troubling to me that because of this one lapse in judgement, she is paying such a high price. I know she is sorry for her actions on January 6, 2021. I am asking that you kindly consider leniency when making your decision regarding reprimand. Thank you for your time.

Sincerely,

Anne Yures

Anne Yures

**A.009**



7/8/22, 2:18 PM                                                          marissa suarez - Google Search

Google        marissa suarez                            ✕  🎤  🔍                    ⚙  ⣿  Sign in

🔍 All   📰 News   🖼 Images   ▶ Videos   🏷 Shopping   ⋮ More          Tools

About 6,000,000 results (0.41 seconds)

https://www.nj.com › monmouth › 2022/05 › 2-women-o...  ⋮
**2 women, one a former NJ jail guard, admit guilt in Jan. 6 ...**
May 11, 2022 — **Marissa Suarez** and Patricia Todisco each pleaded guilty recently to
parading, demonstrating or picketing in a Capitol building, ...

https://www.justice.gov › ... › Capitol Breach Cases   ⋮
**SUAREZ, Marissa A. | USAO-DC - Department of Justice**
SUAREZ, **Marissa A.** ... Case Status: Arrested 1/22/21 in the District of New Jersey. Initial
appearance 1/25/21. Released on conditions. ... Indicted 3/10/21 and ...

🖼 **Images for marissa suarez**   ⋮

Feedback

View all  →

https://nj1015.com › monmouth-county-nj-corrections-...  ⋮
**Monmouth County, NJ corrections officer, friend mull Jan. ...**
Mar 22, 2022 — **Marissa Suarez**, a former Monmouth County corrections officer, and
friend Patricia Todisco are looking at taking plea deals in the Jan.

https://www.app.com › jersey-mayhem › 2021/03/17 › un...  ⋮
**Capitol riot suspect, a former Monmouth corrections officer ...**
Mar 17, 2021 — **Marissa A. Suarez**, a former corrections officer at Monmouth County
Jail, was indicted with another New Jersey woman, Patricia Todisco, ...

https://www.nbcnewyork.com › local › crime-and-courts   ⋮
**Ex-NJ Corrections Officer, Friend Indicted for Capitol Riot ...**
Mar 22, 2022 — 6 Capitol riot are considering plea deals offered by the government. **Marissa**
**Suarez** and Patricia Todisco made a virtual court appearance Tuesday ...

https://www.linkedin.com › marissa-suarez-3abbbba7   ⋮
**Marissa Suarez - The Walt Disney Company - LinkedIn**
Los Angeles Metropolitan Area · Manager, Facilities Operations for The Walt Disney Company ·
The Walt Disney Company

**A.010**

7/8/22, 2:18 PM                                    marissa suarez - Google Search

View **Marissa Suarez's** profile on LinkedIn, the world's largest professional community. Marissa

https://www.linkedin.com › pub › dir › Marissa › Suarez     ⋮

### 40+ "Marissa Suarez" profiles - LinkedIn

View the profiles of professionals named "**Marissa Suarez**" on LinkedIn. There are 40+
professionals named "**Marissa Suarez**", who use LinkedIn to exchange ...

https://www.instagram.com › marissa.suarez     ⋮

### riss (@marissa.suarez) • Instagram photos and videos

**marissa.suarez**. Follow. riss. Artist. N  Y  ☮ See the good in the world . 161 posts. 1,782
followers. 1,409 following.

https://www.facebook.com › public › Marissa-Suarez     ⋮

### marissa-suarez Profiles - Facebook

View the profiles of people named **Marissa Suarez**. Join Facebook to connect with **Marissa
Suarez** and others you may know. Facebook gives people the power...

**1**  2  3  4  5  6  7  8  9  10     Next

**08755, Toms River, NJ** - From your IP address - Update location

Help     Send feedback     Privacy     Terms

**A.011**

Keith Kirsch



Honorable Dabney L. Friedrich
U.S. District & Bankruptcy Courts for DC
333 Constitution Avenue
NW Room #1700
Washington, DC 20001

6/8/2022

Your Honor,

I am writing this letter on behalf of Marissa Suarez. Marissa and I share a business relationship and have formed a close bond of friendship of more than nine years.  I am the owner of several small businesses in New York and New Jersey and an Adjunct Professor at Monmouth University.  Marissa has been a highly valued employee and leader at my Salon in Matawan, New Jersey, since 2013.  During this tenure, she has been the main reason for the success and continuity of the company and has worked both part-time and full-time during this period.  When she began her career in law enforcement full time, she continued to contribute her valuable time to my business and helped us survive the difficult Covid-19 Pandemic.  She did this because she genuinely cared about the business and saw that I needed help.  Besides our working relationship, I am happy to call Marissa a trusted friend.  We are currently in the process of having Marissa purchase the Salon from me, which I feel will start the next positive chapter of her life.

Since 2013, Marissa has managed my business and is trusted with all decision-making.  She has excellent written and verbal communication skills, is highly organized and can work independently.  She is also responsible for interviewing and training new staff, attending yearly trade conferences, and providing excellent customer service to new and existing clients. Marissa is always willing to offer her assistance and has had an excellent rapport with many clients, co-workers, and vendors. I couldn't have been successful with this business with my other business commitments if it wasn't for Marissa.

Marissa is also interested in bettering herself as she has been a part of the Brookdale-Georgian Court University MBA program.  This resonates with me both as someone who obtained their MBA taking night classes and as an Adjunct professor because I know the work it entails.  She has managed to do this in addition to her other responsibilities.

Certainly, Marissa has made a mistake, of which I am convinced that she is very sorry for having committed and for which she is fully prepared to repair.  She has suffered the loss of her previous career as a Corrections Officer, which is devasting. She had worked very hard to go through the demanding Police Academy, which was a very challenging experience.  I hope you will consider my words and allow Marissa the opportunity to both learn from her mistake and begin a positive chapter of her life.  She now has the chance to restart her career with a new business and continue her positive educational path.  I have no doubts she will be a success and a positive and law-abiding member of society.

Please let me know if I can provide additional information or answer any questions, and thank you for your time.

Sincerely,

Keith Kirsch

**A.012**

Dawn Martinkovic

██████████████

███████████████████

████████████

June 10, 2022

Honorable Dabney L. Friedrich
U.S. District & Bankruptcy Courts for DC
333 Constitution Avenue
NW Room #1700
Washington, DC 20001

Dear Judge Dabney L. Friedrich,

I am writing on behalf of Marissa Suarez. It is my honor to speak to her character and vouch for her integrity.

Ms. Suarez and I met over a decade ago at her place of employment. What began as a professional relationship, soon blossomed into a real friendship which I genuinely value. She is more than a friend; I consider her family. Our socialization transcended the workplace and grew to my family and personal friends. I have three children, one of whom is special needs. When spending time together, her true character shines through. She is always generous with her time, advice, and kindness. Whether it's taking care of my cat while I'm away, picking up something from the store, giving my children a ride, patiently listening to my autistic son tell the same story multiple times, or just getting together when I need to talk, Marissa will make herself available. She is honest, trustworthy, and always empathetic. She's loyal, compassionate, and funny. She's a pleasure to be around and I feel blessed to have her in our lives. Marissa is intelligent, hard-working, and driven. She is steadfast in her convictions. These attributes, though mostly positive, can sometimes lead a person to make a poor decision. I realize, by demonstrating at the Capital, Ms. Suarez chose poorly. She did not see the overall picture and thereby committed, pled guilty to, and has been convicted of a crime. What started out as patriotism, soon deteriorated into criminal activity. This is absolutely not in dispute and Marissa has paid a hefty price both personally and professionally. Though her actions were far from exemplary, they have not changed my opinions of Marissa in any way. I still look forward to and enjoy every moment we share together.

Please consider Ms. Suarez' true character in your evaluation, as I believe the world (at least my family) benefits from her contributions. She really is one of the good ones.

Thank you for your time and please do not hesitate to contact me if you should need any further information.

Sincerely,

Dawn Martinkovic

A.013