**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | |
| **v.** | : | **Cr. No. 21-cr-00205-DLF** |
| | : | |
| **MARISSA SUAREZ,** | : | |
| | : | |
| **Defendant.** | : | |
| ─────────────────────────── | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION**
**TO MOTION FOR EARLY TERMINATION OF PROBATION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to Defendant Marissa Suarez's Motion for Early Termination of Probation, ECF No. 78 ("Motion" or "Mot."). In support of this opposition, the government relies on the following factual and legal authorities, as well as any that may be offered at a hearing on this Motion.

On January 6, 2021, while members of Congress gathered in the United States Capitol to certify the results of the 2020 presidential election, Suarez and her codefendant, Patricia Todisco, joined the mob of rioters as they breached the security perimeter of the Capitol. Suarez recorded rioters climbing the external walls of the Capitol and climbing all over the scaffolding that had been erected for the inauguration. Suarez and Todisco entered the Capitol through the Senate Wing doors, less than an hour after they were initially breached by he mob. As she entered, she saw with her own eyes the shattered glass and destruction created by the mob. In the videos that she recorded, Suarez can be heard exclaiming, "this is what [Congress] fucking wanted, this is what they fucking wanted, this is what they get!"

1

For this conduct, on May 2, 2022, Suarez pled guilty to violating 40 U.S.C. § 5104(e)(2)(G): Parading, Demonstrating, or Picketing in the Capitol Building. On July 12, 2022, Suarez was sentenced to 36 months of probation, 60 hours of Community Service, $500 in Restitution, a $2,000 fine and a $10 special assessment. *See* Judgment, ECF No. 71. She now asks this Court to terminate her Court ordered 36 months term of probation, having served approximately 16 months of that term. The Court should deny this motion.

## I.        FACTUAL BACKGROUND

*Suarez's Participation in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Marissa Suarez and Patricia Todisco traveled to Washington, D.C. from Union Beach, New Jersey to attend the "Stop the Steal" rally.  Suarez, a corrections officer who was scheduled to work at the Monmouth County (New Jersey) Corrections Facility on January 6th, requested an emergency holiday to attend the rally in Washington, DC.  Suarez traveled to New York to pick up co-defendant Todisco.  Both women traveled to Washington, D.C. and attended the "Stop the Steal" rally.

Thereafter, Suarez and Todisco followed the crowd to the United States Capitol building and recorded much of what was happening on their mobile devices.  Near the west side of the Capitol, Suarez recorded rioters climbing the walls and breaching scaffolding to access the Capitol. *See* Images 1 and 2.

 

*Image 1:  Rioters climbing wall*          *Image 2:  Breaching Scaffolding*

Todisco admitted that before entering the Capitol "she saw other rioters breaking the windows and doors of the Capitol and then forcing their way into the Capitol." ECF 45 ¶ 9.  Suarez filmed the scene outside the Senate Wing area showing a crowd forcing its way into the building. *See* Image 3 and Image 4.

 

Images 3 and 4:  Rioters outside Senate Wing door area, Suarez' videos

In Suarez' videos of the scene, Suarez can be heard stating, "'this is what they fucking wanted, this is what they fucking wanted, this is what they get.'"  ECF 48 and ECF 45 ¶ 8.  Both Suarez and Todisco explained that the 'they' in Suarez' statement was a refence to members of Congress and 'what they get' was a reference to the storming of the Capitol."  *Id.*

Both Suarez and Todisco entered the Capitol at approximately 3:06 pm through the Senate Wing Door.  *See* Images 5 and 6.



*Image 5:  Suarez enters the Capitol at 3:06pm*



*Image 6: Todisco enters the Capitol at 3:06pm*

In the image below, Suarez wearing a brown winter hat with a small beige patch and matching scarf, and Todisco, wearing a dark-colored winter hat with a light-colored puff on top are both filming or recording the scene with their cellular telephones.   *See* Image 7.



*Image 7:  Suarez and Todisco with mobile devices inside the Capitol*

As Suarez and Todisco made their way into the Senate Wing door entrance, they joined other rioters in chants of " U.S.A."  Todisco's mobile telephone video recorded these chants. That video also shows persons entering the Capitol through a window, and shattered glass from the smashed-in window on the floor.  *See* Images 8 and 9. Suarez's video of this area shows a crowd standing around a pile of overturned furniture.  *See* Image 10.





*Image 8: Entering Window*   *Image 9: Shattered Glass*   *Image 10:Overturned Furniture*

In their January 6 video recordings, Suarez and Todisco are heard chanting along with other protestors, and laughing or celebrating their actions on that day.   Both of them joined the chants of "Our House" and "U.S.A." while recording the scene on their mobile phones.   In one video, Suarez can be heard joining others in "Stop the Steal" chants. *See* ECF 48 ¶ 9.  Both Suarez and Todisco supported the belief that the 2020 Presidential election was stolen. Todisco later stated and admitted in her plea colloquy that "she entered the Capitol 'for one simple fact, that the election was rigged and stolen."   *See* ECF 45 ¶ 9.

From the Senate Wing door entrance, Suarez and Todisco traveled through the Crypt. In the image below, taken from one of Todisco's recordings of the Crypt, Suarez is seen filming another rioter as he dances and parades in the Capitol.  *See* Image 11.  In their videos, both Suarez and Todisco were enthusiastic about being inside the Capitol as both were heard laughing and participating in chants of "Our House."



*Image 11:  Celebrating Inside the Capitol*

After exiting the Crypt, Todisco and Suarez separately wandered through the Capitol.

Suarez and Todisco each spent approximately 28 minutes inside of the Capitol. Both Suarez and Todisco have admitted that they knew at the time they entered the Capitol Building that they did not have permission to do so, and admitted while inside the Capitol, they paraded, demonstrated, or picketed. After exiting the Capitol, Suarez and Todisco remained on the grounds, or in a nearby area, until officers in riot gear arrived to clear the area.

*Suarez' Statements*

On January 22, 2021, FBI agents searched Suarez' and Todisco's cellular telephones or mobile devices pursuant to a warrant. The recovered messages showed that Suarez' and Todisco's decision to travel to DC for the Trump rally was not finalized until January 5th. Their respective text messages show they participated in the breach of the Capitol. The following are some of Suarez' messages.

On January 6, 2021, at approximately 3:20pm, Suarez texted, "Sooo we've stormed Capitol Hill lol." And at 3:23 PM and 3:26 PM on January 6, 2021, Suarez celebrated her actions, claiming, "Everyone stormed the capitol lol" and joked, "We're inside hahaha." On January 7, 2021 at 9:57 AM, Suarez stated, "When we found out pence fucked us, we all stormed the Capitol building and everyone forced entry and started breaking shit...it was a like a scene out of a movie." In another message sent on January 7th at 10:04am, was accompanied with a video from outside the Senate wing doors, Suarez noted, "everyone forcing in."

In a January 7, 2021 message sent at 10:06 AM, Suarez claimed, "the cops started tear gassing... then they let us in again... and once we saw they were letting us in without force, [Todisco] and I went in. And then apparently the 16-year-old got shot not long before. Pelosi and Pence snuck out via Secret Service and everyone else was ducking in their lounge like we had guns

even though we didn't."  Suarez described her breach of the Capitol as fun, as noted on a January 7, 2021 message sent at 10:07 AM: "Then once the fun was over inside and no one wanted to try to breach where the senate was, then [Tadisco] and I left and then it got crazy."  In a January 7, 2021 message sent at 10:09 AM, Suarez claimed they left the Capitol grounds, or a nearby area once riot police arrived, "Then the cops showed up for riot control and that's when it got fucked. The governor issued a 6pm curfew."

Suarez voluntarily agreed to an interview with the FBI after her arrest on January 22, 2021. During this interview, Suarez admitted that she entered the Capitol on January 6th and identified herself in Capitol Police surveillance photographs. Suarez admitted it was a stupid thing to do, and claimed to be willing to help or cooperate with the government.

*The Charges and Plea Agreement*

On January 19, 2021, Marissa Suarez was charged by complaint with violating 18 U.S.C. §§ 1752(a) and 40 U.S.C. §§ 5104(e)(2). On January 22, 2021, she was arrested in the District of New Jersey. On March 10, 2021, Suarez was charged by five-count Indictment with 18 U.S.C. § 1512(c)(2), 18 U.S.C. §§1752(a)(1) and (2), and 40 U.S.C. §§ 5104(e)(2) (D) and (G). On May 2, 2022, she pleaded guilty to Count Six: Parading, Demonstrating, or Picketing in a Capitol Building a violation of 40 U.S. C. § 5104(e)(2)(G). On July 12, 2022, Suarez was sentenced to 36 months of probation, 60 hours of Community Service, $500 in Restitution, a $2,000 fine and a $10 special assessment. *See* Judgment, ECF No. 71.

## II.   <u>LEGAL AUTHORITIES</u>

Pursuant to 18 U.S.C. § 3564(c), a court has discretion to terminate a term of probation imposed in a misdemeanor case at any time "if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3564(c). In making this

determination, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. *Id.*; *see also United States v. Hartley*, 34 F.4th 919 (10th Cir. 2022) (holding that a district court must make individualized determinations based on the applicable statutory criteria before responding to a request to modify a sentence); *cf. United States v. Ferrell,* 234 F.Supp.3d 61, 63 (D.D.C. 2017) (same holding for considering early termination of probation in felony case).

## <u>ANALYSIS</u>

### A.   Suarez Has Not Demonstrated Any New or Extraordinary Circumstances that Warrant Early Termination of Probation.

Suarez argues that her probation should be terminated early because she has completed her community service obligations, paid her monetary obligations, is in full compliance with her probationary conditions, has shown personal growth and a commitment to achieving positive life goals, remained employed, purchased a business and has not been rearrested.  *See* ECF 78 at 1-2, ¶¶ 2, 4 and 5.  However, as many courts have recognized, mere compliance with the conditions of probation does not warrant early termination. Although "extraordinary circumstances . . .  are not necessary for such termination," they "may be sufficient to justify early termination of a term of supervised release." *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020). District courts are entrusted with the discretion on whether to terminate probation or supervised release early consistent with these rules. See, e.g., *Folks v. United States*, 733 F. Supp. 2d 649, 652 (M.D.N.C. 2010) (rejecting motion for early termination of supervised release because there was nothing unusual about his case), citing *United States v. McKay*, 352 F.Supp.2d 359, 361 (E.D.N.Y.2005); accord *United States v. Medina*, 17 F.Supp.2d 245, 247 (S.D.N.Y.1998) (noting that "[w]hile [defendant's] post- incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule");

*United States v. Weintraub*, 371 F.Supp.2d 164, 167 (D.Conn. 2005) (noting that "[a]lthough [the defendant's] ongoing and full compliance with all conditions of supervised release, including payment of the fine and restitution, is commendable, in the end that is what is required to all criminal defendants and is not a basis for early termination of his supervised release"); *United States v. Caruso*, 241 F.Supp.2d 466, 469 (D.N.J.2003) (ruling that "mere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify early termination"); *United States v. Hardesty*, Case No. 95–20031–01–JWL, 2002 WL 731705 (D.Kan. Apr. 2, 2002) (rejecting arguments that defendant is "fully rehabilitated" and complied in all respects with post-release requirements and that continued release would serve "no meaningful and useful purpose").

The defendant is doing what is expected of her, nothing more.  There is nothing extraordinary about her conduct.  It is what is expected of defendants who are on probation.  Suarez also cites to *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997) and *The Supervision of Federal Offenders (2008), Monograph 109*, to support her request.  Former Chief Judge Hogan considered these sources in granting a second request for early termination of supervised release.  *United States v. Etheridge*, 999 F. Supp. 2d 192 (2013).  The defendant in that case had pled guilty to a narcotics conspiracy and been sentenced to a term of incarceration and five years of supervised release.  When the defendant in that case filed his first request for early termination, the Court denied that request and explained that it would reconsider the request once the defendant had finished four-fifths of his supervised release.  *United States v. Etheridge*, Criminal Action 06-133 (TFH), PACER April 3, 2013 Minute Entry ("Defendant's Motion for Early Termination of Supervised Release 30, heard, argued and denied at this time. The Court will entertain a renewed

motion for early termination of supervised release in October 2013, when the defendant has successfully completed four years of his supervised release term.")

Once the defendant reached that milestone and filed a second motion for early termination, the Court granted the request and found that his conduct constituted "exceptionally good behavior." *Id*. at 195-197.  That defendant had been gainfully employed for more than five years, had received a promotion, was going to meetings to deal with his addiction, was sponsoring young addicts, was not associating with other drug users and had reconciled with his adult daughters. *Id*. at 196-197.  Judge Hogan also agreed with the defendant's argument that if supervised release was continued, "it would leave an obstacle to [his] career." *Id*. at 199.

Although Suarez's stable life post-sentencing is commendable, that stability did not prevent her from carrying through on her desire to enter the United States Capitol during the Electoral College certification on January 6, 2021. The full term of probation is necessary to ensure that Suarez continues to refrain from engaging in criminal activity.

### B.   Early Termination of Suarez's Probation Does Not Serve the Interest of Justice.

Looking to the sentencing factors under 18 U.S.C. § 3553(a), early termination of probation here would not serve the interest of justice. As to the nature and circumstances of the offense, § 3553(a)(1), Suarez participated in the January 6, 2021 assault on the United States Capitol, which delayed the certification of the Electoral College. Suarez did so after taking "emergency" leave from her job so she could travel to Washington, D.C. on the day of the Certification.  She traveled to New York, picked up her codefendant and then drove to Washington, D.C.  Despite seeing the mob climbing walls and scaffolding, she continued into the Capitol over broken window glass and overturned furniture.  In order to get to the Senate Wing doors, she would have crossed through numerous barriers and barricades and heard the throes of a mob. She would have observed

extensive fighting with law enforcement officials and smelled chemical irritants in the air. Suarez'

recording of rioters breaking into the Capitol and her decision to enter and happily participate in a

violent riot that she termed as "fun" is especially concerning because Suarez was then a corrections

officer, undoubtedly aware of the danger her presence caused to officers and others. Furthermore,

Suarez' participation ensured the delay of the certification of the 2020 Electoral College vote count

and threatened the peaceful transfer of power after the 2020 Presidential election.  Suarez' who

had seen others break into the Capitol, chanted and laughed while traipsing through the building,

apparently celebrating the riot.

According to Suarez, "When we found out pence fucked us, we all stormed the Capitol

building and everyone forced entry and started breaking shit...it was a like a scene out of a movie."

At another point, Suarez said in similar colorful language that Congress had wanted the Capitol to

be stormed, and that was what it got.[1]

As to other sentencing factors—the history and characteristics of the defendant,

§ 3553(a)(1); the need for the sentence to reflect the seriousness of the offense and promote respect

for the law, § 3553(a)(2)(A); and the need for the sentence to afford adequate deterrence,

§ 3553(a)(2)(B)—this court carefully considered these factors in imposing 36 months of probation,

despite the government's request for a period of incarceration. Suarez's request for a reduction in

that period would undercut the Court's balancing of the § 3553(a) factors after hearing from the

government, defense counsel, and Suarez at the sentencing hearing.

Further undermining the interest of justice, granting Suarez's motion for early termination

may result in significant sentencing disparities between him and similarly situated January 6

---

[1]     For these same reasons, the defendant's reliance on the Cost -Containment Strategies
Related to Probation and Pre-trial Services Offices, Motion at 3, ¶ 9, should be rejected.

defendants. 18 U.S.C. § 3553(a)(6); *see also United States v. Yung*, 1998 WL 422795, at *2 (D. Kan. June 12, 1998) (noting that if the court were to terminate the defendant's supervision early, "it would subvert the underlying policy of the Federal Sentencing Reform Act of 1984 to eliminate sentencing disparity among defendants guilty of similar offenses" and that the defendant's role in the conspiracy made him "more culpable than other convicted participants").

Since Suarez's sentencing, scores of additional Capitol-breach defendants have been sentenced. To aid sentencing courts, the government has developed a table providing additional information about sentences imposed on other defendants that is available at www.justice.gov/file/1567746/download. As demonstrated by this table, terminating Suarez's probationary sentence after less than half of the original term that was imposed would result in significant sentencing disparities with similarly situated defendants.

\* \* \*

In sum, Suarez presents no new information warranting early termination of probation. This Court carefully crafted a sentence of a significant period of probation—36 months—that included conditions to address each of the § 3553(a) factors. A reduction of the probation period would contravene the interest of justice, especially considering the nature and circumstances of Suarez's offense and the sentencing disparity that reduction would create relative to other January 6 defendants.

III.    **CONCLUSION**

For the reasons set forth above, the government respectfully requests that the Court DENY

Suarez's Motion.

Respectfully submitted,

MATTHEW M. GRAVES
 United States Attorney

By: _____/s/____ *Arvind K. Lal*
Arvind K. Lal, D.C. Bar No. 389496
Assistant United States Attorney
601 D Street, N.W.
Washington, DC 20530
arvind.lal@usdoj.gov
(202) 252-7688 (Lal)

*Attorney for the United States of America*

CERTIFICATE OF SERVICE

I HEREBY Certify that a copy of the foregoing motion was served on counsel for the
defendant via ECF this 27th day of October 2023.


_____/s/_ *Arvind K. Lal*_____
Arvind K. Lal
Assistant United States Attorney